UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

JOSEPH PATRICK FRASCOGNA AND
LISA NICHOLS FRASCOGNA                                                                PLAINTIFFS

V.                                                                          CIVIL ACTION NO. 3:07CV96 DPJ-JCS

WELLS FARGO BANK, N.A.
d/b/a AMERICA'S SERVICING COMPANY                                                    DEFENDANT

ORDER

This mortgage dispute is before the Court on the motion of Defendant Wells Fargo Bank, N.A. ("Wells Fargo") d/b/a America's Servicing Company ("ASC") for summary judgment pursuant to Federal Rule of Civil Procedure 56. Plaintiffs Joseph Patrick Frascogna and Lisa Nichols Frascogna have responded in opposition. The Court, having considered the memoranda and submissions of the parties, finds that Defendant's motion should be granted.

I.      Facts and Procedural History

Plaintiffs secured a mortgage on their home in Hinds County, Mississippi, in June 2004, and Defendant Wells Fargo eventually assumed servicing of that mortgage.[1] In August 2005, following Hurricane Katrina, Plaintiffs took advantage of a mortgage payment forbearance program. Following the six-month moratorium period, Defendant sent correspondence to Plaintiffs addressing the accumulated arrearage and inviting them to submit financial information in order to be considered for a repayment plan or loan modification.

---

[1] Plaintiffs executed a deed of trust in favor of BankPlus, which assigned and transferred all beneficial interest in the deed of trust to Mortgage Electronic Registration System, Inc. (MERS). Wells Fargo began servicing the mortgage in November 2005, and MERS executed an assignment of its interest in the deed of trust to Wells Fargo on December 14, 2006.

Due to the Plaintiffs' financial situation, the parties encountered difficulty in trying to negotiate a loan modification designed to bring the loan current. In its April 27, 2006 letter, Wells Fargo warned Plaintiffs that it could not guarantee that they would qualify for a repayment option and advised that "normal default servicing will continue which includes any foreclosure action that may be in process."

In November 2006, Wells Fargo retained the Morris Defendants (John Clyde Morris III, Morris & Associates, and Emily Courteau) to institute non-judicial foreclosure on Plaintiffs' property, and on December 1, 2006, the Morris Defendants informed Plaintiffs by letter that they were commencing foreclosure under the terms of the deed of trust. Thereafter, on December 22, 2006, Wells Fargo sent Plaintiffs a letter in which it agreed to "hold legal action" conditioned upon receipt of a signed agreement and a $50,000 payment, in the form of certified funds or a cashier's check, by December 27, 2006. Around this same time, Plaintiffs notified the Morris Defendants on December 28 that they were disputing the debt. On December 29, 2006, Plaintiffs mailed a $50,000 personal check to Wells Fargo.

Between the time that Plaintiffs mailed the check and the funds were deducted from their account, the Morris Defendants proceeded with the foreclosure. On January 2, 2007, the Morris Defendants responded to Plaintiffs that they had forwarded Plaintiffs' dispute to Wells Fargo for review and, on January 3, 2007, e-mailed the *Clarion-Ledger* a request for publication of the Notice of Foreclosure Sale to run on January 9, 2007. On January 5, Patrick Frascogna wrote the Morris Defendants, indicating that he had paid Wells Fargo $50,000 and the funds were cleared for transfer from his bank on January 4. While his letter was en route, the Morris Defendants

sent Plaintiffs a validation of the debt, including copies of the mortgage and payment history, and advised them that the foreclosure sale was scheduled for January 30, 2007.

Patrick Frascogna's letter was delivered on January 9, and the Morris Defendants immediately responded that they would contact Wells Fargo to research the matter. After consulting with Wells Fargo, the Morris Defendants e-mailed the *Clarion Ledger* on January 10, cancelling publication of the Notice of Sale. The foreclosure sale was never held, and Plaintiffs have not been dispossessed of their property.

Feeling aggrieved by the threat of a foreclosure sale that never occurred, Plaintiffs filed the instant action against the Morris Defendants and Wells Fargo.[2] In their Complaint, Plaintiffs allege the following claims: (1) violation of the Fair Debt Collection Practices Act (FDCPA); (2) fraudulent misrepresentation; (3) breach of contract; (4) breach of the duty to act in good faith; (5) negligence; (6) defamation; (7) intentional infliction of emotional distress; (8) negligent infliction of emotional distress; and (9) breach of fiduciary duty. Wells Fargo, the only remaining defendant, has now moved for summary judgment as to all of Plaintiffs' claims.

II.  Analysis

    A.  <u>Summary Judgment Standard</u>

Summary judgment is warranted under Rule 56(c) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient

---

[2] The Morris Defendants settled with Plaintiffs and have been dismissed.

showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324. Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Instead, when the movant shows the absence of a genuine issue of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995). A simple plea for a jury trial on the bare assertion that there are genuine issues of material fact is not a sufficient response to a motion for summary judgment. *F.D.I.C. v. Brewer*, 823 F. Supp. 1341, 1347 (S.D. Miss. 1993) (citing *Washington v. Armstrong World Indus., Inc.*, 839 F.3d 1121, 1122–23 (5th Cir. 1988)).

Significant to the present motion, the non-movant must also "articulate the precise manner in which the submitted or identified evidence supports his or her claim[s]." *Smith ex rel. Estate of Smith v. United States*, 391 F.3d 621, 625 (5th Cir. 2004). In the present case, Plaintiff failed to respond to many of Defendant's arguments and even as to entire substantive claims. Although the Court has endeavored to consider the record as a whole, the Court is "under no duty

'to sift through the record in search of evidence to support a party's opposition to summary judgment.'" *Fuentes v. Postmaster Gen. of USPS*, No. 07-10426, 2008 WL 64673, at *3 (5th Cir. Jan. 7, 2008) (citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir.1998); *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n. 7 (5th Cir.1992)); *see also Malacara*, 353 F.3d at 405 ("When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court.").

Finally, in reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075. When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 150 (2000).

### B. FDCPA

Plaintiffs assert in Counts One and Ten of their Complaint that the Morris Defendants violated the FDCPA and that Wells Fargo is vicariously responsible for the violation. Complaint ¶¶ 82-92. The FDCPA was enacted to "eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). A "debt collector" is an individual who engages in "the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or assert to be owed or due another." 15 U.S.C. § 1692a(6).

#### 1. *Vicarious Liability*

Plaintiff does not suggest that Wells Fargo was a debt collector or that it violated the FDCPA. Rather, their entire FDCPA claim against this defendant is premised on the notion that

5

Wells Fargo "may be found liable for the conduct of [the Morris Defendants] in violating the FDCPA and other federal and state laws pursuant to this Court's opinion in *Freeman v. CAC Financial, Et Al.*, 3:04cv981 WS (S.D. Miss. 2006)." Complaint ¶ 86. In other words, Plaintiffs contend that, based on *Freeman*, Wells Fargo is vicariously liable for the Morris Defendants' FDCPA violations. 2006 WL 925609 (S.D. Miss. Mar. 31, 2006).

Defendant correctly observed in its summary judgment motion that *Freeman* actually rejects the notion of vicarious liability under the FDCPA. *Id.* at *3 (noting that "the authority addressing the question of vicarious liability holds that a creditor who hires a debt collector is not vicariously liable for the collector's FDCPA violations") (citing *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 108 (6th Cir. 1996); *Gary v. Goldman & Co.*, 180 F. Supp. 2d 668 (E.D. Pa. 2002)); *see also Fouche' v. Shapiro & Massey L.L.P.*, 575 F. Supp. 2d 776, 783 (S.D. Miss. 2008) (granting mortgagee's motion for summary judgment on the plaintiff's FDCPA claim and rejecting vicarious liability claim); *Williams v. Countrywide Home Loans, Inc.*, 504 F. Supp. 2d 176, 190-91 (S.D. Tex. 2007) (rejecting claim that lender defendants should be held liable because their attorneys violated the FDCPA).

Plaintiffs' summary judgment response skips the vicarious liability issue and focuses instead on whether the Morris Defendants were debt collectors and whether they violated the FDCPA. Because vicarious liability is the only theory of liability against Wells Fargo under the FDCPA claim, Plaintiff's failure to address Defendant's meritorious argument is fatal to the claim.

2.  *Morris Defendants*

Even if vicarious liability existed, the Morris Defendants were not debt collectors and the non-judicial foreclosure sale is not covered by the FDCPA. Courts have repeatedly held that where a law firm is hired to conduct a non-judicial foreclosure to enforce a security interest in the property, not to collect any deficiency, the firm's efforts do not constitute debt collection under the FDCPA. *Fouche'*, 575 F. Supp. 2d at 785; *see also Brown v. Morris*, 243 F. App'x 31, 35 (5th Cir. 2007) (considering a non-judicial foreclosure by the Morris Defendants and finding that they were not "*per se* an FDCPA debt collector"). Here, there is no dispute that the Morris Defendants instituted non-judicial foreclosure as to the subject property.

Similarly, attorneys or firms who are primarily involved in non-judicial foreclosures are not "debt collectors" under the FDCPA. *Brown*, 243 F. App'x at 35 (acknowledging distinction between debt collection and enforcement of a security interest) (citing *Kaltenbach v. Richards*, 464 F.3d 524, 527 (5th Cir. 2006)); *see also Fouche'*, 575 F. Supp. 2d at 785. Wells Fargo has submitted uncontroverted evidence, in the form of affidavits, that the Morris Defendants do not engage in the collection of unsecured debts, but rather pursue foreclosure on behalf of their clients, 95% of which are non-judicial foreclosures. Plaintiffs have not submitted evidence to contradict these affidavits. *See Fouche'*, 575 F. Supp. 2d at 784-85 (finding an attorney was not a debt collector where he primarily foreclosed on deeds of trust through non-judicial foreclosure and "occasionally" through judicial foreclosure and the plaintiff presented no evidence to the contrary).

In their response, Plaintiffs concede that a "properly conducted" non-judicial foreclosure is not covered by the FDCPA, but argue that this foreclosure attempt was not proper.

7

Specifically, Plaintiffs point to the fact that the deed of trust assignment in favor of Wells Fargo and the substitution of trustee naming the Morris Defendants were signed and recorded after the Morris Defendants first contacted Plaintiffs but before they initiated the non-judicial foreclosure proceedings. Plaintiffs, however, do not cite any authority to support this argument and fail to explain how the timing of the assignment and substitution of trustee somehow created liability under the FDCPA. The argument is therefore rejected.

    C.    <u>Fraudulent Misrepresentation</u>

In Count Two of their Complaint, Plaintiffs allege two instances of misrepresentation by Wells Fargo. First, Plaintiffs complain that Wells Fargo falsely represented that if they tendered a payment of $50,000, Wells Fargo would cease foreclosure proceedings ("the foreclosure misrepresentation"). Second, Plaintiffs maintain that Wells Fargo advised them to withhold their mortgage payments in anticipation of being granted a repayment plan which never materialized ("the repayment plan misrepresentation").

Under Mississippi law,

> [i]n order to recover under a theory of fraudulent misrepresentation, a plaintiff must prove, by clear and convincing evidence, the following elements: "(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of the truth; (5) his intent that it should be acted on by the hearer and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; and (9) his consequent and proximate injury."

*Holland v. Peoples Bank & Trust Co.*, 3 So. 3d 94, 100 (Miss. 2008) (quoting *Bank of Shaw v. Posey*, 573 So. 2d 1355, 1362 (Miss. 1990)). "[A] promise of future conduct does not meet the requirement of a 'representation' unless the promise was made with the current intent not to perform." *Bank of Shaw*, 573 So. 2d at 1360.

8

As to the foreclosure misrepresentation, Plaintiffs must show by clear and convincing evidence that Wells Fargo had no intent to perform on its purported future promise to cease foreclosure proceedings. Defendant contends that no such evidence exists. Plaintiffs apparently concede the point, offering no response whatsoever to Defendant's motion for summary judgment as to the alleged foreclosure misrepresentation. *Celotex Corp.*, 477 U.S. at 322. Defendant's motion is therefore granted as to this alleged misrepresentation.

Plaintiffs likewise fail in their burden to establish a jury question as to the alleged repayment plan misrepresentation. Plaintiffs complain that they applied for a repayment plan, they were denied, and Wells Fargo encouraged them to keep trying. Plaintiffs remark that Wells Fargo "should have just said no." Response at 14. However, the February 17, 2006, letter from Wells Fargo to Plaintiffs explicitly states that "selecting a[ ] [repayment] option does not guarantee that you will qualify" and advises Plaintiffs that the mortgage payment moratorium is about to expire and "all of the postponed payments in addition to your March payment will be due on March 1, 2006." Plaintiffs were also warned that "[i]f you anticipate that you will be unable to make this payment in full, your loan will follow the standard default collections process." Future letters informed Plaintiffs that their request for loan modification had been denied based on their income and expenses. Each letter informed Plaintiffs to contact Wells Fargo "[i]f you would like to be reconsidered for workout options."

Plaintiffs must demonstrate that the statement was actually false. *Holland*, 3 So. 3d 100. In the present case, Defendant may have allowed Plaintiffs to reapply, but it consistently informed Plaintiffs that there were no guarantees of acceptance. Moreover, there is no dispute

9

whatsoever that Plaintiffs were able to reach a workout agreement in December 2006, making it difficult to see how Defendant's offer to reconsider was false.

The only other issue raised in Plaintiffs' response relates to an email exchange with one of Defendant's employees wherein Plaintiffs were advised in March 2006 that they may want to consider holding future payments and apply them as contribution payments. Again, there is no evidence that the statements were false. Nowhere in the email does the employee suggest that Defendant would waive penalties, and Defendant's letters stated that nothing had been waived. Defendant's motion for summary judgment as to Plaintiffs' fraudulent misrepresentation claim is granted.

    D.    <u>Breach of Contract and Breach of the Duty to Act in Good Faith</u>

Plaintiffs aver breach of contract in Count Three of their Complaint. In their summary judgment response, Plaintiffs contend that the letters to and from Defendant in late December constituted a valid contract. This alleged contract required Plaintiffs to submit a $50,000 payment (which they did) and Wells Fargo to "suspend" foreclosure (which it did). Considering the evidence in the light most favorable to Plaintiffs, simply put, no breach occurred. The foreclosure proceedings were in fact stopped and never took place. Plaintiffs still possess their home.

Assuming the slight delay could constitute a material breach, the delay caused no damages, and Plaintiffs therefore failed to establish an element essential to their breach of contract claim. *See Favre Prop. Mgmt., LLC v. Cinque Bambini*, 863 So. 2d 1037, 1044 (Miss. Ct. App. 2004) ("The elements of a breach of contract are: (1) the existence of a valid and binding contract; (2) that the defendant has broken, or breached it; and (3) that the plaintiff has

been thereby damaged monetarily.") . Plaintiffs insist that had Wells Fargo immediately halted the foreclosure efforts upon receipt of the funds, the one-time publication of the notice of sale would have been averted. They further contend that this breach, the only one identified, injured them in the following three ways: (1) the cost of filing an injunction to prevent foreclosure; (2) interest and penalties charged since March 2006; and (3) the negative impact of having the matter reported on consumer credit reports.

As an initial point, Plaintiffs' arguments fall short of establishing damages because Patrick Frascogna failed to identify any of these damages when asked in his deposition to "describe exactly how you were damaged by your receipt of that notice of sale." Instead, Frascogna, an attorney skilled in this very subject area, merely identified emotional distress that was "difficult to describe." A party cannot contradict its deposition testimony with unsworn arguments. *TIG Ins. Co.*, 276 F.3d at 759.[3]

Even considering the three purported damage categories, Plaintiffs' claim still falls short under Rule 56. Starting with the injunction, those fees and expenses are not recoverable. Seeking the ex parte order was clearly a litigation tactic in the present dispute, and there is nothing about the "contract" or Defendant's conduct that would make such expenses recoverable even to a prevailing party. *See Willard v. Paracelsus Health Care Corp.*, 681 So. 2d 539, 544 (Miss. 1996) ("Repeatedly, the Court has followed the American rule that when there is no contractual provision or statutory authority providing for attorney's fees, they may not be

---

[3]As for the emotional distress, Plaintiffs did not rely on this testimony in their summary judgment response, and even if the argument had not been waived, the testimony falls well short of the level of proof necessary under Mississippi law. *See Univ. of S. Miss. v. Williams*, 891 So. 2d 160, 173 (Miss. 2004) (establishing the level of proof necessary to seek emotional distress damages in breach of contract actions).

awarded as damages unless punitive damages are proper as well."); *Terex Corp. v. Ingalls Shipbuilding, Inc.*, 671 So. 2d 1316, 1324 (Miss. 1996) (holding that attorneys fees are not recoverable in ordinary breach of contact actions).

Even if the cost of the injunction was recoverable, those expenses raise serious causation and mitigation issues. Plaintiffs filed in chancery court on January 27, after the notice was pulled. Under Mississippi law, Wells Fargo and the Morris Defendants could not have foreclosed absent renewed publication. Miss. Code Ann. § 89-1-55 (requiring the notice of sale be published for three consecutive weeks in a newspaper published in the county and posted at the courthouse of the county). Because the one-time notice was a nullity under section 89-1-55, the injunction was not causally related to the alleged delay in pulling the notice. To the extent Plaintiffs contend the injunction was related to the delay, then the damages were avoidable because the notice was already of no legal consequence. The law imposes upon an individual the duty to mitigate his damages. *Frierson v. Delta Out door, Inc.*, 794 So. 2d 220, 225 (Miss. 2001).

As for the accumulation of interest and penalties, Plaintiffs attribute those losses to conduct that occurred in March 2006, not the alleged breach of the December 2006 agreement. Thus, the interest and penalties are not causally related to the only alleged breach addressed in their summary judgment response. Finally, Plaintiffs' assertion that the one-time publication of the notice of sale adversely affected their credit is just that - an assertion - there is no record evidence that the publication was noted on their credit report or that it affected their credit rating. *TIG Ins. Co.*, 276 F.3d at 759 (noting that conclusory allegations, speculation, unsubstantiated

assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial). In the end, Plaintiffs' breach of contract claim should be dismissed.

In addition, Wells Fargo asserts that Plaintiffs' breach of the duty to act in good faith claim (Count Four) should be dismissed for the same reasons. *See Grand Housing, Inc. v. Bombardier Capital, Inc.*, No. 04-60615, 2005 WL 673267, at *4 (5th Cir. Mar. 23, 2005) (affirming dismissal of bad faith claim where the defendant "at all times acted within its contractual authority"). Plaintiffs failed to respond to this portion of the motion. The Court finds Defendant's argument is well-taken, and its motion as to Count Four is granted.

E. Defamation and Emotional Distress

In Count Six of their Complaint, Plaintiffs complain that the Defendants

> caused a false and defamatory statement, to-wit, that the Plaintiffs' home was to be sold at a foreclosure sale on January 30, 2006 [sic], to appear as an unprivileged publication to tens-of-thousands of subscribers, and internet readers, of the Clarion-Ledger newspaper on January 9, 2006, in addition to posting notice of same in the lobby of the Hinds County Courthouse, said acts amounting to, at their least, negligence, by the Defendants and, consequently, subjected each Plaintiff to harm caused by the wrongful publication.

Counts Seven and Eight of the Complaint contain Plaintiffs' infliction of emotional distress claims. Generally, Plaintiffs allege that the Defendants negligently and/or intentionally caused Plaintiffs emotional and mental distress through their conduct. Wells Fargo seeks summary judgment on each of these counts.

Plaintiffs' response to these claims is brief; they argue only that their claims survive because the Morris Defendants were acting as debt collectors at the time they contacted Plaintiffs and therefore the actions of the Defendants violated the FDCPA. As discussed earlier, the Morris Defendants are not debt collectors under the FDCPA and a non-judicial foreclosure sale is not

13

covered by the FDCPA. Thus, under Plaintiffs' logic, the dismissal of their claim against Wells Fargo under the FDCPA necessitates dismissal of their emotional distress and defamation claims. In addition, as Wells Fargo points out, Plaintiffs have failed to provide evidence to support these claims.

First, to prevail on a claim of defamation, Plaintiffs must prove:

(1) a false and defamatory statement regarding the plaintiff; (2) unprivileged publication to a third party; (3) fault amounting at least to negligence on the part of the publisher; and (4) either action ability of statement irrespective of special harm or existence of special harm caused by publication of the defamatory statement.

*Stephens v. Kemco Foods, Inc.*, 928 So. 2d 226, 233 (Miss. Ct. App. 2006). Wells Fargo asserts that the defamation claim fails as a matter of law because the contents of the statements in the notice of sale were true and because the publication should be considered privileged, in that it is required by law. *See Blake v. Gannett Co., Inc.*, 529 So. 2d 595 (Miss. 1988) (noting that truth is a complete defense to a claim of defamation and that the plaintiff has the burden of proving falsity); Miss. Code Ann. § 89-1-55 (requiring the notice of sale be published for three consecutive weeks in a newspaper published in the county and posted at the courthouse of the county). Plaintiffs failed to respond to these arguments which otherwise appear meritorious.

Second, to support a claim for intentional infliction of emotional distress, Plaintiffs must show that Wells Fargo's conduct was "wanton and willful and it would evoke outrage or revulsion." *Speed v. Scott*, 787 So. 2d 626, 630 (Miss. 2001). As Mississippi courts have repeatedly recognized, "meeting the requisites of a claim for intentional infliction of emotional distress is a tall order in Mississippi." *Riley v. F.A. Richard & Assocs., Inc.*, --- So. 2d ----, No. 2007-CA-755-COA, 2009 WL 368342, at *9 (Miss. Ct. App. Feb. 17, 2009); *see Speed*, 787 So.

2d at 630; *Jenkins v. City of Grenada*, 813 F. Supp. 443, 446 (N.D. Miss. 1993)). Plaintiffs made no such showing and failed to respond to this legal argument.

Third, Plaintiffs offered no evidence demonstrating "some sort of physical manifestation of injury or demonstrable physical harm" as is required to sustain a claim for negligent infliction of emotional distress. *Wilson v. Gen. Motors Acceptance Corp.*, 883 So. 2d 56, 65 (Miss. 2004) (holding that plaintiff may not "recover emotional distress damages resulting from ordinary negligence without proving" such harm) (citations omitted). Based on the foregoing, the Court finds that Plaintiffs' defamation and emotional distress claims should be dismissed.

F. <u>Negligence and Breach of Fiduciary Duty</u>

In Count Five of their Complaint, Plaintiffs aver that Wells Fargo was negligent in retaining the services of the Morris Defendants because Wells Fargo "knew or should have known" that the Morris Defendants had a "proclivity for violating the FDCPA." In its motion, Wells Fargo maintains that (1) Plaintiffs have produced no evidence that the Morris Defendants have a history of violating the FDCPA; (2) Wells Fargo knew or should have known of the alleged propensity; and (3) the Morris Defendants did not violate the FDCPA in their handling of Plaintiffs' non-judicial foreclosure. Defendant's submissions satisfy Rule 56 on the negligence claim. Conversely, Plaintiffs failed to address the negligence claim in their response and therefore failed to meet their burden under Rule 56. *Celotex Corp.*, 477 U.S. at 322. The negligence claim is due to be dismissed.

Finally, Wells Fargo seeks summary judgment as to Plaintiffs' breach of fiduciary duty claim (Count Nine), noting that a lender owes no fiduciary duty to a borrower. *See Gen. Motors Acceptance Corp. v. Baymon*, 732 So. 2d 262, 270 (Miss. 1999) ("'[T]he general rule is that there

is no presumption of a fiduciary relationship between a debtor and creditor.'" (quoting *Peoples Bank & Trust Co. v. Cermack*, 658 So. 2d 1352, 1358 (Miss. 1995))). Plaintiffs failed to respond to this portion of the motion. Finding Defendant's argument meritorious, the Court grants summary judgment as to Plaintiffs' breach of fiduciary duty claim.[4]

III.     Conclusion

In sum, the Court finds that Defendant Wells Fargo's motion for summary judgment should be granted. Plaintiffs' claims are dismissed with prejudice.

A separate judgment will be entered in accordance with Federal Rule of Civil Procedure 58.

**SO ORDERED AND ADJUDGED** this the 31th day of August, 2009.

              s/ *Daniel P. Jordan III*
              UNITED STATES DISTRICT JUDGE

---

[4] Finding no basis for liability against this Defendant, the Court further finds that Plaintiff's punitive damages claim should likewise be dismissed.